AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

In the Matter of the Search of                               )
*(Briefly describe the property to be searched*              )
*or identify the person by name and address)*                )
                                        )    Case No. 19-mr-724
**TARGET DEVICES from Attachment A, which is**               )
**incorporated by reference**                                )
                                         )

## APPLICATION FOR A SEARCH WARRANT

    I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):* **TARGET DEVICES from Attachment A, which is incorporated by reference; located at 1001 Indian School Road NW, Albuquerque NM 87104.**

located in the _____ District of _____ **New Mexico** _____ , there is now concealed *(identify the person or describe the property to be seized):* **See Attachment B, which is incorporated by reference.**

    The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

    ☑ evidence of a crime;

    ☑ contraband, fruits of crime, or other items illegally possessed;

    ☐ property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

    The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | Possession of controlled substance with the intent to distribute |

    The application is based on these facts:

**See attached affidavit, which is incorporated by reference.**

    ☑ Continued on the attached sheet.

    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Gregory Knox, Criminal Investigator**
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __June 18, 2019__

City and state: __Albuquerque, NM__

_____
*Judge's signature*

Jerry H. Ritter , United States Magistrate Judge
_____
*Printed name and title*

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUN 18 2019

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN THE MATTER OF THE SEARCH OF INFORMATION
ASSOCIATED WITH A CELLULAR TELEPHONES

1. Brand: Samsung Note 9
   Model: SM-N960U
   SN: RF8KA1L6PGB
   IMEI: 358621092419077

2. Brand: iPhone 7 Plus
   Model: MN562LL/A
   SN: FCCVV55AHFYC
   IMEI: 355347087443186

3. Brand: REVVL2
   Base VRS: MOLY.LR12A.R3.MP.V20.1.P21
   Build#: AR3SUMS1

Case No. _____

## AFFIDAVIT FOR A SEARCH WARRANT

I, Gregory L. Knox, from the United States Department of Interior, Bureau of Indian Affairs (BIA), being first duly sworn, hereby depose and state as follows:

### I.    INTRODUCTION AND AGENT BACKROUND

1.       I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am a Special Agent (SA) with the United States Department of Interior, Bureau of Indian Affairs ("BIA"), and I have been a sworn law enforcement officer for over 17 years. I am currently assigned to the Office of Justice Services, Division of Drug Enforcement (OJS-DDE) within the District of New Mexico. I received a Master of Science degree in Criminal Justice from Weber State University in Ogden Utah and a Bachelor of Science degree in Criminal Justice with a minor in Psychology from Northeastern State University in Tahlequah Oklahoma.

2.       I have attended two (2) basic law enforcement academies, including Natural Resource Police Training (NRPT) at the Federal Law Enforcement Training Center (FLETC), and Criminal Investigator Training Program (CITP) at FLETC. Since attending these basic training courses, I have also attended numerous other basic and advanced law enforcement training courses which covered topics including drug enforcement, crime scene investigation, evidence collection and handling, laws relating to search and seizure, as well as criminal procedures and other topics. During my career as a federal law enforcement officer, I have completed the Drug Enforcement Training Program (DETP) where I received training in the investigation and enforcement actions of drug crimes including but not limited to the unlawful possession and trafficking of methamphetamine, marijuana, cocaine and heroin and other controlled substances. Prior to working for the BIA as a criminal investigator, I was a uniformed Officer for the

1

United States Department of Agriculture (USDA) Forest Service (FS) for eight (8). I served six (6) of those years as a K-9 officer (trained in narcotics detection). I then served approximately ten (10) years as a Special Agent for the USDA-FS.

## II. PURPOSE OF AFFIDAVIT

3.          I make this affidavit in support of an application for a warrant authorizing the search of the TARGET CELLPHONES, as described in Attachment A, for evidence, fruits and instrumentalities of violations of 21 U.S.C. § 841(a)(1), that being Possession with Intent to Distribute a Controlled Substance. The applied for warrant will authorize forensic examination of the device for the purpose of identifying electronically stored data, particularly described in attachment B.

4.          I make this affidavit based upon my personal knowledge gathered during my participation in this investigation on conversations with other agents and officers who have engaged in numerous controlled substance investigations and on facts and information from the following sources I believe to be reliable: oral and written reports about this investigation which I received directly or indirectly from Bureau of Indian Affairs Police Officers.  This affidavit is being submitted in support of a search warrant for three (3) cellular phones, which are listed as follows; Samsung Note 9, Model: SM-N960U, SN: RF8KA1L6PGB, IMEI: 358621092419077, iPhone 7 Plus, Model: MN562LL/A, SN: FCCVV55AHFYC, IMEI: 355347087443186, REVVL2, Base VRS: MOLY.LR12A.R3.MP.V20.1.P21, Build#: AR3SUMS1 (the TARGET CELLPHONES).

5.          Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation but have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence relating to violations of Title 21, United States Code 841(a)(1) is located on the TARGET CELLPHONES.

## III. BACKGROUND INFORMATION

6.          On or about May 26, 2019, at or about 10:18 a.m., BIA K-9 Police Officer Nicholas Jackson Officer Jackson was monitoring vehicle traffic, traveling eastbound on Interstate 40, within in the exterior boundaries of the Laguna Indian Pueblo at the 125-mile marker. Officer Jackson was wearing his department-issued uniform and displaying his badge of office, while operating a marked canine police vehicle with his assigned canine partner, Kofi. Officer Jackson was parked perpendicular in the center median. Officer Jackson observed what he later identified to be a white Chevrolet Impala, bearing Texas registration "LWN 5564" (sedan). The sedan was verified to be speeding (approximately 81 miles per hour in a 75 mile per hour zone). Officer Jackson activated his Dash Camera/Audio to record the enforcement action. As the SUV passed, Officer Jackson left the center median speeding up to the SUV with his activated emergency lights/siren. Upon coming to a complete stop, Officer Jackson exited his patrol car and approached the SUV on the passenger side as he normally does for safety from oncoming vehicular traffic. Officer Jackson approached and noted that there were two occupants in the vehicle.  Officer Jackson made contact with the driver, later identified as Eric Harold MILLER and, and the front seat passenger, later identified as Eloisa Asuncion Zapata PEREZ. Officer Jackson greeted MILLER and explained the violation. MILLER was further explained he would be issued a warning for speeding.

2

7.       During this time, Officer Jackson was standing at the open passenger window and observed a radar detector attached to the front windshield. Also, Officer Jackson observed a multi-colored glass pipe containing a green leafy like substance. MILLER was also observed smoking a cigarette and blowing the smoke towards the open passenger-side window, where Officer Jackson was standing. Officer Jackson recognized this as an attempt to mask the odors of contraband from law enforcement, which is a technique he commonly encounters from persons smuggling contraband. Furthermore, Officer Jackson knew possession of marijuana was illegal to possess under federal law within the Laguna Indian Reservation (Federal Land). MILLER advised the vehicle was a rental car and was asked to walk back to the patrol car, where Officer Jackson was going to issue a warning. MILLER complied. Once at the patrol car, Officer Jackson completed the written warning and explained the violation to MILLER. MILLER then advised he understood the violation of speeding and would slow down. During the course of conducting business, Officer Jackson engaged MILLER in general conversation as he sat in the front passenger seat of the patrol vehicle. MILLER advised the following about his travel plans:

- MILLER stated he and PEREZ were traveling to Atlanta, Georgia to see his apartment;

- MILLER stated he rented the vehicle;

- MILLER stated after visiting Atlanta, Georgia he and PEREZ were traveling to Florida near Miami;

- MILLER stated he would be in Florida for a few days before he flew back to California;

- MILLER stated PEREZ was going to take a bus back to California from Florida;

- MILLER stated he was going to purchase his airline ticket and PEREZ's bus ticket when he had a better idea of when they wanted to return.

8.       Officer Jackson then asked to inspect the Vehicle Identification Number (VIN) on the inside of the driver's door. MILLER gave verbal permission to inspect the VIN and waited outside of the police vehicle. Officer Jackson approached the sedan and open the driver's door to inspect the VIN. As Officer Jackson inspected the VIN, he engaged PEREZ in general conversation about her travels. PEREZ stated the following:

- PEREZ stated she was traveling with MILLER to Atlanta, Georgia;

- PEREZ stated MILLER was going to purchase her a plane ticket for her to fly to South Carolina from Atlanta, Georgia;

- PEREZ stated she was going to be in Atlanta for about 2 days.

9.       While speaking with PEREZ, Officer Jackson noted her hands were shaking uncontrollably and her breathing appeared to be irregular. Officer Jackson observed PEREZ's chest rising and falling as if she was experience labored breathing. Furthermore, PEREZ spoke in a very low tone and she avoided eye contact during the entire brief interaction. Officer Jackson noted his second interaction with PEREZ was much different from the initial contact. Based upon the totality of the circumstances Officer Jackson noted throughout the enforcement contact, which included what was said, the manner in which it was said, his

3

training and experience; Officer Jackson's knowledge and experience with the general motoring public and the numerous factors of criminal activity listed below, Officer Jackson believed PEREZ and MILLER were actively involved in major criminal activity:

- MILLER and PEREZ gave different accounts of travel plans which was very suspicious for 2 people to do who were driving across the United States.
- Officer Jackson observed a radar detector attached to the interior front windshield of the rental vehicle;
- PEREZ hands shook uncontrollably during the secondary contact;
- PEREZ's level of nervousness continued to climb throughout the enforcement action;
- MILLER stated he was driving home but was not taking the fastest route;
- The route MILLER and PEREZ were currently taking, avoided Border Patrol Checkpoints;
- MILLER and PEREZ did not have a genuine reasoning as to why they were driving to Atlanta and Miami, which would have been cheaper and faster;
- MILLER and PEREZ gave different paths of return travel which is inconsistent with the general motoring public.

10.     Officer Jackson returned to the patrol car to issue the written warning to MILLER after confirming the VIN. Officer Jackson then engaged MILLER in a consensual encounter. Officer Jackson asked MILLER if he could clarify his travel plans with PEREZ. Again, MILLER gave the exact same accounts as prior. Officer Jackson advised MILLER he wanted to speak with PEREZ and MILLER stated he wanted to come with Officer Jackson.

11.     Officer Jackson deployed his Narcotics Detector & Police Service Dog, K-9 Kofi, who would perform an air sniff on the interior of the sedan. K-9 Kofi is certified to detect the odor of scheduled controlled substances, such as marijuana, cocaine, heroin and methamphetamine. Upon locating a scheduled controlled substances, K-9 Kofi will alert through numerous behavioral changes which can be seen and heard. If K-9 Kofi can get to the source of the odor, he will show a final response. K-9 Kofi's final response is passive, where he is trained to sit down or lie down, and stare at the source of the odor. Officer Jackson deployed K-9 Kofi on-lead and began his search in the front of the sedan. K-9 Kofi later gave a change in behavior (alert) to the trunk. K-9 Kofi's alerts may indicate items recently contaminated with or associated with the odor of one or more of the controlled substances.

12.     Based on this alert, a probable cause search was conducted of the vehicle and revealed a combined weight of forty-one and eight tenths (41.8) pounds of marijuana (located in the trunk of the vehicle). Agents also located (1) cellular phone on the center console of the vehicle (belonging to MILLER), and two (2) phones in the passenger seat (belonging to ZAPATA-PEREZ), which are the TARGET CELLPHONES that are subject of this warrant. When asked about the presence of the marijuana, MILLER and ZAPATA-PEREZ claimed to not know it was in the trunk.

4

13.     Based on my training and experience, having performed and been involved with narcotics investigations, narcotic traffickers often use cellular telephones to assist in their activities. Therefore, such cellular telephones may contain lists of contacts who are customers and suppliers of narcotics (including names, addresses; phone numbers, email addresses and other identifying information), types, amounts and prices of drugs being trafficked, imported or purchased, along with data applying to date, places, and amounts related to specific transaction. These phones may also contain information regarding user distribution. Much of the narcotics found within the United States have been imported from foreign nations and are therefore related to international and domestic travel, the related records for which can be stored within cellular telephones. Additionally, modern cellular telephones often can access the internet, allowing the phone's user(s) to access financial records and perform monetary transaction, send and receive emails, browse web addresses and access other information available on the internet to assist in narcotics trafficking activities. Photographs contained in the gallery of cellular phones may contain depictions of contraband and instrumentalities associated with drug trafficking. Social Media application including but not limited iMessage, Facebook, Whats App can contain these messages. Based on my training and experience individuals distributing narcotics utilize cellular telephones to conduct their drug trafficking activities in an attempt to hinder and evade law enforcement investigations.

14.     Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

15.     Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

16.     Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of

flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

17.     GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

18.     PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

## CONCLUSION

19.     Based on my training, experience, and research, I know that cellular phones have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. Based on all of the information set forth in this application, and my training and experience, I respectfully submit that there is probable cause to believe that the instrumentalities, fruits, and evidence of violations of Title 21, United States Code § 841(a)(1) are being stored in the TARGET CELLPHONES, described in Attachment A.

20.     As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the TARGET CELLPHONES were used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the iPhone because: Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file.

6

21.    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22.    Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

23.    This affidavit has been reviewed and approved by Assistant United States Attorney Shana Long. The TARGET CELLPHONES are already in the lawful possession of law enforcement.

Respectfully submitted

Gregory L. Knox
Special Agent


Subscribed and sworn to before me
on:   June 18, 2019

United States Magistrate Judge

**ATTACHMENT A**

**DESCRIPTION OF PROPERTY TO BE SEARCHED**

The items to be searched are currently located in lawful possession of the Bureau of Indian Affairs Office of Justice Services, Albuquerque office located at 1001 Indian School Rd, NW, Albuquerque, NM. These devices are being held as evidence as the result of a traffic stop and seizure of approximately forty-one and eight tenths pounds (41.8 lbs.) of green leafy substance.

Item to be searched:

1.      Brand: Samsung Note 9
        Model: SM-N960U
        SN: RF8KA1L6PGB
        IMEI: 358621092419077

2.      Brand: iPhone 7 Plus
        Model: MN562LL/A
        SN: FCCVV55AHFYC
        IMEI: 355347087443186

3.      Brand: REVVL2
        Base VRS: MOLY.LR12A.R3.MP.V20.1.P21
        Build#: AR3SUMS1

8

**ATTACHMENT B**

1. All records on the Device described in Attachment A that relate to violations of Title 21, United States Code § 841(a)(1), including:

   a. lists of contacts who are customers and suppliers of narcotics (including names, addresses; phone numbers, email addresses and other identifying information), types, amounts and prices of drugs being trafficked, imported or purchased, along with data applying to date, places, and amounts related to specific transaction. These phones may also contain information regarding user distribution.

   b. lists of customers and related identifying information;

   c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

2. any information recording Eric H. MILLER or Eloisa A ZAPATA-PEREZ's schedule or travel to the present;

   e. all bank records, checks, credit card bills, account information, and other financial records.

3. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.